946 F.2d 885
 138 L.R.R.M. (BNA) 2696
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John N. HAYES, James E. Larsen, Plaintiffs-Appellees,
v.
INTERNATIONAL ORGANIZATION OF MASTERS, MATE AND PILOTS,
Defendant-Appellant.
John N. HAYES, James E. Larsen, Plaintiffs-Appellants,
v.
INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS,
Defendant-Appellee.
 Nos. 90-1832, 90-1839.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1991.
Decided Oct. 3, 1991.
As Amended Oct. 25, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-87-1084-PN)
 Argued: W. Michel Pierson, Pierson, Pierson & Nolan, Baltimore, Md., for appellant.
 Michael Edward Tankersley, Public Citizen Litigation Group, Washington, D.C., for appellees.
 On Brief: A. Elizabeth Griffith, Pierson, Pierson & Nolan, Baltimore, Md., Burton M. Epstein, New York City, for appellant.
 Paul Alan Levy, Alan B. Morrison, Public Citizen Litigation Group, Arthur L. Fox, II, Kator, Scott & Heller, Washington, D.C., for appellees.
 D.Md., 736 F.S. 89.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RESTANI, Judge, United States Court of Trade, Sitting by Designation.
 OPINION
 PER CURIAM:
 
 
 1
 These appeals stem from an award of attorneys fees to plaintiffs John N. Hayes and James E. Larsen following entry of a preliminary injunction against their union and settlement of plaintiffs' claims that the union leadership had acted in violation of their rights of free speech and voting under the Labor-Management Reporting Act of 1959 ("LMRA"). 29 U.S.C. § 401 et seq. There are two issues presented for review: (1) whether the district court's award of fees to Hayes and Larsen based upon the common benefit rationale of Hall v. Cole is an abuse of discretion; (2) whether the district court's decision not to award fees incurred by counsel seeking back pay for Hayes was clearly erroneous. Finding no such abuse of discretion and error, we affirm the decision of the district court.
 
 I.
 A.
 
 2
 These appeals result from an award of attorneys fees to plaintiffs John N. Hayes and James E. Larsen following entry of a preliminary injunction against the defendant union and settlement of their claims that the union leadership acted in violation of free speech and voting rights under the LMRD. The court, however, denied recovery of fees incurred in pursuit of plaintiff Hayes' claims for back pay and benefits. The defendant, the International Organization of Masters, Mates, & Pilots ("MMP"), appeals the award of any attorneys fees; Hayes and Larsen have cross-appealed for the portion of the fees denied by the district court.
 
 B.
 
 3
 MMP is a national union. It is governed by a General Executive Board ("GEB"), on which Hayes served as vice president as well as a trustee. This action was brought by Hayes when he was removed from his office as vice president, and the union leadership initiated a referendum to recall him. Larsen, a union member who voted for Hayes, joined as plaintiff in this action.
 
 
 4
 As a vice president and trustee of the Union Pension and Welfare Funds, Hayes criticized the union president for allegedly mismanaging the fund. In June 1985, Hayes was removed as a trustee. Following his removal, Hayes reported his criticism to the Journal of Commerce. Subsequently, the union enacted a "gag" rule. This rule provided that:
 
 
 5
 no employee, representative or member of the [GEB] shall give any statement or information relating to the organization or its benefit plans, either directly or indirectly, to any representative of the press or other media unless approved in advance by the International subcommittee ... who may consult with counsel to insure the protection of individual rights. It is further resolved that any violation of this resolution and action by the [GEB] shall be grounds for discharge or for suspension or removal from office....
 
 
 6
 On March 31, 1987 some members of the GEB initiated a recall referendum. Moreover, the board suspended Hayes without pay as vice president pending the outcome of the referendum. On June 8, 1987 the district court granted Hayes and Larsen's motion for a preliminary injunction. The court ordered the union to reinstate Hayes as vice president and impound the recall referendum ballots. The court, however, dissolved the previous order restraining contract negotiations pending the referendum. The court found that there was strong support in the law for Hayes' position that an elected union official cannot be removed for his speech in an attempt to suppress dissent. Moreover, the removal of Hayes, according to the court, denied his supporters representation and could have a chilling effect on expression.
 
 
 7
 The union did not initiate another referendum, and Hayes remained in office until December, 1988. He was not reelected in regularly scheduled elections that year.
 
 
 8
 Meanwhile, on July 20, 1987, Hayes and Larsen filed a motion for summary judgment. The motion was denied, with the court's finding that a trial was necessary to resolve disputes of material facts. On May 1, 1988, the parties reached a settlement agreement. In the settlement the union agreed to (1) give Hayes all the back pay and benefits it had withheld while he was suspended; (2) destroy the impounded ballots; and (3) publish a prominent notice in a union newspaper announcing that the GEB recommended the repeal of the gag rule.
 
 
 9
 Hayes then filed an application for attorneys fees. On May 3, 1990, the court found that the plaintiffs were entitled to fees under Hall v. Cole, 412 U.S. 1 (1973). The court awarded fees incurred in preparing suit and obtaining the preliminary injunction ordering the MMP to reinstate Hayes. The court, however, held that fees incurred after entry of the preliminary injunction to recover back pay and benefits for Hayes could not be awarded, because such relief constituted "economic recovery" which benefitted Hayes more than other union members. Accordingly, the court reduced the attorneys fees incurred between June 8, 1987, and the settlement by half and reduced the total expenses for the litigation by 30%. This apportionment resulted in an award of $54,224.36 in fees and expenses; the requested total was $73,925.60. The union and the plaintiffs filed motions to amend or alter the fee award. Both motions were denied on July 24, 1990. The union appealed. Thereafter, Larsen and Hayes cross-appealed.
 
 II.
 A.
 
 10
 This first issue was properly decided based upon reasoning set forth in Hall v. Cole, 412 U.S. 1 (1973) and Sheet Metal Workers v. Lynn, 488 U.S. 347 (1989). In Hall, the Court held that a union member who successfully brings an action vindicating statutory rights protected by Title I, is entitled to attorneys fees. Union member Hall alleged that after he introduced resolutions accusing union officers of undemocratic actions and shortsighted policies, he was expelled from the union pursuant to a rule remarkably like the gag rule in the instant case. Id. at 1. Hall obtained a temporary restraining order restoring him to membership and, ultimately, final judgment that the union's conduct violated his right of free speech under § 101(A)(2) of the LMRA. Id. While the Court considered only that Hall's membership be restored, it held that the lawsuit conferred a "common benefit" on the entire union membership because:
 
 
 11
 [w]hen a union member is disciplined for exercising any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the "chill cast upon the right of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the result achieved but in their implication of the future conduct of union' affairs." Yablonski v. United Mine Workers of America, 151 U.S.App.D.C. 253, 260, 466 F.2d 424, 431 (1972).
 
 
 12
 Id. at 8.
 
 
 13
 The Hall justification for attorneys fees is even more compelling when the Title I rights of a union official are at issue. The benefits of vindicating an official's Title I rights against a union's retaliatory action is twofold. First, a union leader, like Hayes, when restored to office provides a benefit to members who were denied the representation of their choosing. Sheet Metal Workers, 488 U.S. 347, 355. Moreover, the chilling effect on union members is exacerbated when the victims of retaliatory actions are officials. Id. Furthermore, the chilling effect is greater when the official first airs his troublesome grievances with a federal agency, the Department of Labor, then the union threatens him with a gag rule.
 
 
 14
 The union's counterargument is threefold. First, Hayes and Larsen are not prevailing parties because there was no disposition on the merits. Second, the common benefit was ancillary because Hayes received a personal benefit in vindicating his rights. Third, the common benefit came about as a result of the union acceding to a "nuisance" settlement.
 
 
 15
 Responding to the union's first argument, Yablonski v. United Mine Workers of America, reveals that the fact that this case was not decided on the merits does not obscure the common benefit conveyed. 150 U.S.App.D.C. 253, 466 F.2d 424 (1972). The issue is not whether the dispute was litigated, in determining whether there was a benefit created by settlement:
 
 
 16
 [a]ssuming effectiveness in terms of practical results, the litigating stage attained is relevant only to the amount of the fees to be allowed, and not to the issue of whether they should be awarded at all.
 
 
 17
 Id. 431. Were we to accept the requirement urged upon us by the union, litigants would be encouraged to "fight it out" with free expression likely trammeled in the skirmish. Yablonski recognized this problem when it noted that:
 
 
 18
 three of the suits never got beyond the issuance of preliminary injunctions, and the fourth failed even to do that. The fact is that in the former three cases the preliminary injunction was the critical step and procured all the relief required; and in the fourth case the very filing of the complaint and the holding of a hearing on the motion for a preliminary injunction effected a change in position by the defendant which warranted the conclusion that no mandatory order was necessary to achieve plaintiff's aims....
 
 
 19
 In the present case the settlement following the preliminary injunction was the "critical step."
 
 
 20
 The union's second counterargument similarly fails. That contention seems to be that the personal benefit from the relief is primary, while the common benefit ancillary. Retaliatory actions of unions like that of Hall and in the instant case are not directed at free expression generally but rather at its individual proponents. Nevertheless, without according the individual protection, with its attendant personal benefits, this court cannot protect expression generally. Even if this were not the case, the attempt to revoke the gag rule and the suspended referendum still benefitted not only the individual Hayes but the union membership generally.
 
 
 21
 For the very reasons that the union's first two contentions fail, so does its third.
 
 B.
 
 22
 The award of attorneys fees under § 102 of the LMRD, 29 U.S.C. § 412, is subject to review for abuse of discretion. Hall v. Cole, 412 U.S. 1, 4 (1973). Accordingly, the trial court's judgment in awarding fees should not be overturned unless it is clearly in error. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978). Under such a standard, we cannot say that the trial court's fee calculus was in error.
 
 III.
 
 23
 Based upon the foregoing discussion, we affirm the trial court's awarding fees and the particular determination of the amount.
 
 
 24
 AFFIRMED.